HENRY VAIL and others, executors of SALLES, *vs.* JULIA VAIL
and others.

A testator by his will directed his executors, from the *income* of his estate, to
pay and appropriate such sums as might be necessary for the support and
education of his minor children, until each should attain the age of 21
years, or marry, when that provision was to cease. He then gave to each
of his adult daughters, $25,000, and directed the like sum to be paid to
each of his three infant daughters when they should be of age, or marry
with the consent of the executors; and also directed a further sum of
$25,000 to be paid to each of his five daughters as they should respectively
attain the age of 25 years. To his son, he gave $25,000 on his attaining
the age of 21 years; $25,000 on his attaining the age of 25 years; and the
like sum at the age of 27 years. He then directed his executors, after the
sale of his real estate, "to set apart all that should *then remain* of his estate,
for the use and benefit of his six children and their issue, and in such pro-
portions as to equalize, with interest, the *previous advances* which should
have been made *by his executors to them*, according to the directions therein
before given, and to give to each of his said children an *equal benefit* from
his estate." *Held*, that on a settlement of the estate the children were not
to be charged with the sums applied for their support and maintenance
during minority; those sums not being included in the term "previous ad-
vances," used in the will.

It is the legal duty of a father to support his children during their infancy,
according to his ability; and although the legal obligation is not continued
upon his estate after his death, yet every parent recognizes the moral obli-
gation. And so natural is the feeling, that in any ambiguous case, it may
be presumed that the parent was acting under its influence. *Per*
MITCHELL, J.

The court acts upon this principle in giving interest to an infant legatee, by
way of maintenance, where the child has no other provision.

IN EQUITY. This was a re-hearing on the part of certain
infant defendants, of a portion of a decree made at special term,
by Justice Edmonds. (*See* 7 *Barb.* 226, *S. C.*)

L. Salles died in 1833, leaving a widow and two adult and
four minor children, having made his will in July, 1831. He
appointed seven persons to be executors of his will, and two of
them to be the guardians of his minor children. He gave lega-

Vail *v.* Vail.

cies to his wife and to collateral relatives, which were held good by the decree. He also directed his executors, from the *income* of his estate, to pay and appropriate such sums as might be necessary for the support and education of his minor children, until each should attain the age of 21 years, or marry, when that "provision" was to cease. He next directed $10,000 to be invested by his executors, and the income to be paid to his daughter Cecile for her separate use during her life, and at her death gave it to her children or to her appointees. The rest of his estate was to be invested by his executors for the benefit of his children; and he then gave to each of his adult daughters $25,000, and directed the like sum to be paid to each of his three infant daughters when they should be of age, or marry with the consent of the executors; and also directed a further sum of $25,000 to be paid to *each* of his said five daughters as they should respectively attain the age of 25 years; or to be invested for each in her own name, if she should so direct. If either daughter should die under the age at which such payments were to be made to her, and leave issue living at the time the payment would have been made, the issue were to take the sums so to be paid; otherwise those sums were to go into the residue. The testator also gave to his son, Laurent Salles, $25,000 on his attaining 21 years of age; the like sum on attaining 25 years of age; and a third sum of the like amount on his attaining the age of 27 years. He then directed his executors to sell all his real estate, as soon as his youngest child should attain the age of 25 years; or as soon thereafter as his widow should die; and as soon as convenient after such sale "to set apart all that should *then remain* of his estate, for the use and benefit of his said six children and their issue, and in such proportions as to equalize, with interest, the *previous advances* which should have been made by *his executors to them*, according to the directions therein before given, and to give to each of his said children an *equal benefit* from *his estate;*" not regarding, however, any inequality of distribution which his wife should make of the sum of $25,000 which she had the power of appointing, or which might arise from the

Vail *v.* Vail.

investment of the $10,000 for his daughter Cecile.  The testator then directed the share of each child to be invested, so that he or she should receive only the income, for life, and then it should go over to the issue or survivors.

The widow having since died, and the youngest child attained the age of 25 years, the decree made at the special term declared the legacies to the son, and the appropriation for the support of the infants, and certain other legacies, to be valid, but the legacies to the daughters, and other dispositions in the will, to be void; that the referee take an account of all payments made by the executors, to or for the benefit of any of the parties ; charging each distributee with the sum paid to him or her, with interest, including the $75,000 paid to the son, but excluding the above legacy of $10,000 ; and also excluding the sums applied to the support of the infant children during their minority.

*George T. Strong*, for the plaintiffs.

*David Graham*, for the defendants Tonnele and wife.

*C. W. Sandford*, for the defendants Aaron Vail and others.

*L. B. Woodruff*, for the defendants De Alfaro and others.

*R. Emmett*, guardian ad litem for infant defendants.

*By the Court*, MITCHELL, J.  The objection made to the decree is that the children are not charged with the sums applied for their support during their minority; and it is insisted that the intention of the will was that they should be charged with such sums, and that those sums are included in the term " previous advances," used in the will.  (18 *Ves.* 490.)

It is the legal duty of a father to support his children during their infancy, according to his ability ; and although the legal obligation is not continued upon his estate after his death, yet every parent recognizes the moral obligation, and so natural is

Vail *v.* Vail.

the feeling, that in any ambiguous case it may be presumed that the parent was acting under its influence. The courts have acted on this principle. Thus, if a bequest be made to a stranger, payable at 21, it will not carry interest; but if given to a child, under the same terms, and the child has no other provision, "the court will give interest by way of *maintenance*, for they will not presume the father *inofficious*, or so unnatural as to leave a child destitute." (3 *Atk.* 102. 1 *Id.* 507.)

Thus the provision for maintenance is regarded not as a mere gift, but as a duty—a duty which it is unnatural to omit. On the same principle, if a child be advanced by a settlement of real or personal estate, and his parent dies intestate, he is to receive only so much of the estate "as shall be sufficient to make all the shares of the children, in the real and personal estate and advancement to be equal, as nearly as can be estimated." But still the law, looking to the duty of the parent to support his child, expressly excludes from advancements money expended in the maintaining or educating of the child. (1 *R. S.* 754 § 26. 2 *Id.* 98, § 78.) The exclusion was made to comply with the general sense of what was proper, and because money so expended was not deemed an advancement, nor incompatible with the object expressed "of making all the shares of the children equal, as near as can be." It shows that the legislature considered that those shares will be equal, as nearly as may be, without bringing into the common fund moneys applied to the support of the infants. The law as to intestates makes the distribution at the death of the intestate, and accordingly it does not continue the support of the children beyond that time. Here the testator postponed the distribution of all his estate for a longer period, and for a portion of the intervening time provided for the maintenance of his infant children. He chose that the guardians of his children should stand in his place, and be as a father to them, until the children should be of age, or marry, when that "provision" for them was to cease; and they should be advanced by portions to be given to them.

There are striking differences between the moneys to be applied for the support of the children and the several sums of

Vail *v.* Vail.

$25,000 to be given to them on their attaining the ages of 21 or 25, or marrying. The first sums were to be paid out of the income only, and would leave the capital of the estate unimpaired, would be consumed in the using, and without the possibility of producing interest, and would be in small and inconsiderable sums; and they were not for purposes of profit or advancement, but of necessity.

The last might and naturally would be paid out of the capital, and would thus so far diminish it—would produce interest—were in large sums—and were for the purpose of advancing the children; being payable to them at marriage, or at the ages of 21 and 25.

The advances which the testator meant to bring into hotch-pot were to be charged with interest. It is incredible that he meant that the sums to be expended for his children's support should carry interest.

The term advances does not even in ordinary cases, include money thus expended. Its etymological and its ordinary use indicates moneys paid before, or in advance of, the proper time of payment. Thus it is used as to moneys paid before the completion of work under a contract, and as to property given to a child at his full age or marriage, and which is received in anticipation of the share which he will have in his parent's estate at the parent's decease. If it be deemed equivalent to advancement and then to imply the advancing the son or daughter in life by promoting his or her pecuniary interest, that meaning may well apply to the large bequests given on marriage, or on the child attaining full age, but not to the moneys expended for his support.

In *Onslow* v. *Mitchell*, (8 *Ves.* 490,) the plaintiff was entitled to two sums of £3000 each, and received two legacies, one of £4000 from his father, and the other of £500 from his mother. The court held the first a satisfaction in part. The defendant also insisted that other sums which the plaintiff alledged were merely trifling presents, should also be deducted from the £6000. The deed of settlement was for raising portions for children to be born, and declared if either parent of the children should

settle, *give* or *advance* to, *for* or upon the child entitled to por-
tions *any* sums of *money*, lands, goods or *chattels* for or towards
their advancement or preferment in marriage, or *otherwise*, such
sums &c. should be deemed part of the portion. Trifling pres-
ents were "*chattels*," "given to or for the child;" and the sup-
port of the child was as much money advanced to or for the child
as in this case. Yet the counsel for the defendant did not argue
that either was to be deemed a satisfaction in part. The £4000
was payable at 21 by the father's will, but the £500 was a bare
legacy; and the last was not by the decree allowed to go in
satisfaction of the portion.

On the same principle, in the case before us, the legacies are
also payable at 21, 25, or marriage, and so would properly be
considered as advances or advancements; while the smaller sums
expended for the daily support of the children could not be so
regarded, whether disbursed by the executors or guardians in
driblets day by day, or in annual sums.

The order made at special term should be affirmed.

---

SAME TERM. *Before the same Justices.*