---

(49 Misc. Rep. 380.)

### In re FREEL (two cases).

(Surrogate's Court, Kings County. February, 1906.)

1. WILLS—CONSTRUCTION—TESTAMENTARY TRUSTS.

Under a will giving all the property to the widow for life with remainder to the children, and also by a later clause vesting in the wife and executors power to manage the estate and sell or mortgage the property, applying such of the proceeds as might be necessary to the benefit of the estate and investing the residue, and providing that the wife should be entitled to the interest during her life, the property went to the executors in trust, and the wife was entitled to the income for life.

2. EXECUTORS AND ADMINISTRATORS—ACCOUNTING—EXPENDITURES—PURPOSE—EVIDENCE.

Where, on an executors' accounting, it was shown that checks amounting to a large sum were given to the executor, who claimed not to have expended the money for any individual or personal object, and the only proof as to the use to which the money was put was the stubs of the checks which stated that they were drawn for house expenses, the checks should be so credited.

Judicial settlement of the accounts of Francis J. Freel, as executor, and Catherine Freel, as executrix of Edward Freel, deceased. Decree rendered.

Michael F. McGoldrick, for executrix Catherine Freel.
Ketcham & Owens, for executor Francis J. Freel.
Pearsall, Kapper & Pearsall, for contestant Philomena McCleary.

CHURCH, S.  The executrix makes a final accounting in obedience to an order directing her so to do, obtained at the instance of her co-executor, Francis J. Freel; and the executor, Francis J. Freel, also presents for settlement his account as executor of such estate.  The only other party to the proceeding, Mrs. McCleary, presents certain objections to the account of the executor; and the latter, in turn, files objections to the account of the executrix.  Upon the hearing, however, most of the objections were disposed of by mutual concession.

There remains the objection, made by Mrs. McCleary, to two items which appear in the executor's account aggregating the sum of about $7,000.  These same items are also found in the account of the executrix.  The executrix says that these items were for "expenses" and that checks payable to bearer, representing these amounts, were given to her son, the executor.  The executor, on the other hand, says that he received the entire amount of money represented by these checks; but that he expended no portion of it, in any way, for any individual or personal object.  Under this state of facts, the executrix asks to be credited with this payment as a proper one and that the executor should be surcharged therewith.  It is perfectly apparent that all of the parties to this litigation and their counsel know perfectly well what this money was used for, and that it was used for some object which all of them recognize and concede to be a proper one; but that, for some reason, they are unwilling publicly to disclose the same.  In fact, the court surmises what this reason is and what this money was used for.  But matter submitted to a court cannot be disposed of on surmises.

There is no theory upon which the executrix can be credited with the payment of this amount of money and the executor surcharged therewith.  It appears, by the stubs of the checkbook kept by the administratrix, that this money was drawn for "household expenses."  The checks were payable to bearer and bear no indorsement.  Under these circumstances, the entry made in the stub of the checkbook was not made unadvisedly, but should be deemed a correct statement of the purpose of the checks and, therefore, these two items should be credited among the items of household expenses made by the executrix.  A very much more serious question arises, however, as to the construction of the will of the deceased.  As frequent reference will have to be made to such will in the course of this opinion, I set out in full the paragraph in question:

"Second, I give, devise, and bequeath to my wife, Catherine Freel, all my property of every nature and kind, real, personal, and mixed, whatsoever and wheresoever situated, for and during the full period of her natural life, and after her death to my children, Edward F. Freel, Francis J. Freel, and Philomena Freel, to be equally divided between them, share and share alike. In case of the death of any of my said children before my wife, leaving him or her issue surviving, then the share of said child so dying to go to said issue; and in case of the death of any of my said children before my wife, without issue, then the share of said child so dying to go to the survivors of my chil-

dren, share and share alike. And I desire that my said wife, with the aid and assistance of my executors hereinafter named, shall manage said estate during her life with care and prudence, so as to subserve the best interests of the children who will take said property after her death as aforesaid. And for the purpose of enabling my said wife to carry out my wishes in this respect, I hereby authorize and empower her as my executrix and my executors hereinafter named, to grant, bargain, sell, convey, mortgage, or otherwise dispose of said property or any part thereof, and to execute and deliver good and sufficient deeds therefor, and in case of mortgaging same or any part thereof, to execute and deliver good and sufficient mortgages thereon, if in the judgment of my said wife and executors it shall be advisable and beneficial to the estate so to do and apply such part of the proceeds as may be required for the benefit of the estate to that purpose and invest the residue, if any, securely for the benefit of my said wife and children, my wife to take the interest thereof during her life, the principal thereafter to be distributed as heretofore provided, and if it shall not be necessary to apply any of the proceeds of any such sale, mortgages or disposition for the benefit of the estate as aforesaid, for the purpose aforesaid, then the interest shall be paid as aforesaid, and the principal on the death of my said wife shall be divided between my children share and share alike."

The executrix contends that under the provisions of this paragraph, she has an absolute life estate in her individual capacity in all of the property of the deceased, and that this life estate she is free to manage and handle; but that, when any of such property is sold, it is held by the trustees for her benefit. The executor, on the other hand, asserts that under the provisions of this will the entire estate was given to the trustees to hold in trust during the lifetime of Mrs. Freel, to whom they are to pay the net income from the same and, upon her death, to divide the property among the remaindermen therein mentioned. At the outset of the consideration of this subject, however, the executrix contends that, in a litigation between the executor and the executrix had in the Supreme Court some years since, this will was judicially construed, and that such decision is res adjudicata. An inspection of the record in such case discloses that an action was brought by the executor and the judgment shows the complaint was dismissed. In the short decision which was rendered the only thing that is said in relation to whether there is a trust contained in this will or not is as follows:

"No trust is imposed upon the executors as such which needs judicial construction."

In view of the admission by counsel for the executrix that the latter part of the second clause in the will unmistakably creates a trust, it can hardly be claimed that the above decision was in any way intended to mean that there was no trust whatever created in the will. Such decision could have been rendered upon the theory that the trust which was created was so simple and plain that it was unnecessary to construe the will and that, as the life estate which measured the same had not been terminated, there was no present necessity for passing upon the provisions of the will in question. Lewis v. Ocean N. & P. Co., 125 N. Y. 341, 26 N. E. 301; Bell v. Merrifield, 109 N. Y. 202, 16 N. E. 55, 4 Am. St. Rep. 436; Rudd v. Cornell, 171 N. Y. 114, 63 N. E. 823. Taking up the consideration of the will, therefore, it is unnecessary to discuss the question as to whether a trust has been created by the last part of the second paragraph of such will, because of the admission

that it has that effect by the executrix. The contention of the executrix that all of the estate of which the testator died possessed she takes by virtue of being life tenant, but that when any of such property is sold the proceeds thereof are intended to be held in trust for her benefit is, in my judgment, very unnatural. Certainly no good reason why this method of procedure should be adopted can be suggested. On the other hand, the contention of the executor that it was the intention to have the entire estate go to the executors in trust, to pay the net income thereof to the executrix during her life, is the natural and probable way which a person acting under the advice of his counsel would select.

The testator, it is apparent, had respect and confidence in the ability and judgment of his sons. When the will was drafted, it is evident that the relations between them and their mother were agreeable and he, therefore, intended that this property should be under their joint control, giving the net income to the mother and making her the arbiter as to the proportion that any of the children should have, from time to time, from the corpus of the estate. The words in the first part of the second paragraph of the will apparently create a complete life estate in the executrix; and, under the general principle, where a complete bequest or devise is given in the first part of a will, it will not be cut down or modified by subsequent language, unless this purpose is clear. But where it plainly appears from the subsequent provisions that it was not the intention in the first instance to create a complete and absolute device, then the language will be taken as a whole and such absolute expressions modified, in accordance with the general intent. Matter of Donohue, 109 App. Div. 158, 95 N. Y. Supp. 821. If the first part of this will gave a complete life estate in this entire property to the executrix in her individual capacity, then the subsequent trust, which she concedes is created, is contrary to the same and cuts it down. That being so, we have a concession that it is assuredly modified to a certain extent by the later paragraphs of the will. The proper construction of this entire second paragraph is that, at the outset, the testator announces that the executrix is to have a life estate in the property, and then, by the subsequent provisions in regard to the trust, provides how it shall be accomplished and that the income realized from the same shall be paid "as aforesaid," plainly indicating that the life estate was to be the right which the executrix was given as a beneficiary of the trust and, on the other hand, further showing that the income was to be derived from the entire estate. The fact that the courts will determine that a trust has been created in a will, although there is no express language to that effect, is well established. Morse v. Morse, 85 N. Y. 53.

The case of Meek v. Briggs, 87 Iowa, 610, 54 N. W. 456, 43 Am. St. Rep. 410, may be cited as being a case very similar to the case at bar in which a similar conclusion was reached. In adopting this conclusion it is appreciated that it is rare that any two wills will be found drafted in precisely similar form and that the various decisions apply the rules of construction to the different cases as they arise, bearing in mind that the chief thing to be accomplished is to ascertain the intent of the testator if the same can be gathered from the will as a whole, and the construction adopted seems to be what testator desired.

Let a decree, therefore, be drafted settling the accounts of the executors as indicated and directing that the estate be turned over to them as trustees to be held for that purpose of the trust.

Decreed accordingly.