on behalf of the state comptroller. There was a material difference between their estimates of the value of decedent's real property. The appraiser adopted the valuation of the state comptroller's expert. An examination of the testimony shows that this valuation was not unreasonable or unwarranted, and the surrogate, therefore, will not interfere with the finding of the appraiser.

The order fixing tax will be reversed, and the appraiser's report remitted to him for correction as indicated.

Order reversed.

(82 Misc. Rep. 1.)

## In re BARTHOLOMEW'S WILL.

(Surrogate's Court, Schoharie County. July, 1913.)

1. WILLS (§ 858\*)—LAPSED LEGACY—DISPOSITION.

A testator, after giving $1,000 to his wife, gave the use of all his property over and above the $1,000 to his wife until their youngest child arrived at the age of 21, at which time, of the property "not above bequeathed to my wife," he gave $1,000 to a daughter, and the balance to a son. Held, that the bequest to the son was not a residuary bequest, there being no apparent intention that he should take whatever should fail to pass by the prior provisions of the will, but was merely a bequest of the balance of the particular fund remaining after taking $1,000 from the estate; and hence, the wife having died before the testator, the legacy to her lapsed and passed as in case of intestacy to the children equally.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 2173–2183; Dec. Dig. § 858.\*]

2. WILLS (§ 487\*)—CONSTRUCTION—SURROUNDING CIRCUMSTANCES.

In arriving at the scope and meaning of a clause in a will disposing of a balance or residuum, the court will look, not only at the language employed, but the surrounding circumstances, to determine the testator's intention.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1023, 1026–1032; Dec. Dig. § 487.\*]

3. WILLS (§ 671\*)—NATURE OF ESTATES CREATED—TRUSTS.

A testator, after a legacy to his wife, gave to her the use of all of his real and personal estate, over and above such legacy, until their youngest child arrived at the age of 21, at which time it was to be divided, the daughter to receive $1,000 and the son the balance. The wife was appointed executrix but died in the testator's lifetime. At the time of his death the daughter was aged 5, and the son 9, and neither owned any property in their own right. The testator left personal property worth $6,500 and a house and lot worth $1,000, which was in substantially the same form as when the will was made. Held, that, giving consideration to the will as a whole, to the surrounding circumstances, and to the presumption that the testator intended to provide for his children's support during their minority, the property was given to the executrix under an implied trust to apply the income to the support of the wife and children during the minority of the daughter.

[Ed. Note.—For other cases. see Wills, Cent. Dig. §§ 1577, 1578, 1586; Dec. Dig. § 671.\*]

4. TRUSTS (§ 156\*)—EXECUTOR AS TRUSTEE—EXECUTION OF TRUST BY ADMINISTRATOR WITH WILL ANNEXED.

Such trust being annexed to the office of executrix, and there being no personal confidence expressed in the discretion of the person named as

executrix, the trust might be executed by the administrator with the will annexed.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 201, 202; Dec. Dig. § 156.*]

**5. WILLS (§ 487*)—CONSTRUCTION—SURROUNDING CIRCUMSTANCES.**

A testator's intention is not to be determined exclusively by the words used, but by such words weighed in the light of the surrounding circumstances when the will was made.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1023, 1026–1032; Dec. Dig. § 487.*]

**6. WILLS (§ 455*)—CONSTRUCTION—CARRYING OUT GENERAL INTENTION.**

Where, upon a perusal of the whole will, a general scheme is found to have been intended and provided for, which is consistent with the rules of law, it is the duty of the courts to effectuate this main purpose of the testator; and, to accomplish this, words and phrases may be given a meaning other than that which would attach to them if standing alone, and words may be rejected, supplied, or transposed.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 972, 973, 976; Dec. Dig. § 455.*]

**7. TRUSTS (§ 25*)—CREATION—SUFFICIENCY OF LANGUAGE USED.**

To create a trust, no particular formula of words need be used; it is not essential to use the words "trust" or "trustee," or that there should be a direct devise in terms to the trustee, or that an authority to receive the rents and profits should be conferred in express language, it being sufficient if the intention to create the trust can be fairly collected from the instrument, what is implied from the language used being deemed to be expressed.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 34–37; Dec. Dig. § 25.*]

Proceeding for the probate of the will of Jerome Bartholomew, in which the construction of the will was put in issue. Will admitted to probate and construed.

G. L. Danforth, of Middleburgh, for proponent.

W. H. Golding, of Cobleskill, special guardian of William Bartholomew, infant.

W. H. Sidney, of Central Bridge, special guardian of Catherine Bartholomew, infant.

BEEKMAN, S. The will provides:

"First. After all my lawful debts are paid and discharged, I give and bequeath to my beloved wife Christina Bartholomew the sum of One Thousand Dollars absolutely. Also I give and bequeath to my said wife the use of all my real and Personal Estate over and above the One Thousand Dollars until our youngest child arrives at the age of twenty-one years. At which time the Real and Personal Property not above bequeathed to my wife, I give and bequeath as follows. To my daughter Catherine Bartholomew the sum of One Thousand Dollars and to my son William Bartholomew the balance of all my Estate both Real and Personal.

"Likewise, I make, constitute and appoint my wife Christina Bartholomew to be executrix of this, my last Will and Testament, hereby revoking all former Wills by me made, with full power to sell any or all Real Estate for the purpose of carrying out the terms of my will.

"In Witness Whereof, I have hereunto subscribed my name," etc.

The testator's wife, who was named as legatee and executrix, died before the testator. Testator left his daughter, Catherine, aged five,.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

and his son, William, aged nine, as his only next of kin and heirs at law. Neither the wife nor the children owned·any property in their own right. The testator left personal property valued at about $6,500 and a house and lot worth about $1,000, and the property which he left was in substantially the same form as when the will was made. Upon the probate of the will the construction thereof was expressly put in issue in pursuance of section 2624 of the Code.

There were no objections to the probate of the will, which was duly executed, and the testator was competent to make a will, and was not under restraint, and a decree will be entered admitting the same to probate and appointing the petitioner, Charles Durham, the general guardian of the infants, administrator, etc., with the will annexed, upon his giving a bond to be approved by the surrogate.

[1, 2] The construction of the will in accordance with the intention of the testator and the rules of law is not without difficulties. Neither the court nor the able attorneys who have submitted briefs have been able to find any adjudicated case presenting the same conditions. The legacy of $1,000, bequeathed to the wife in the first-quoted sentence of the will, lapsed. Does this $1,000 fall into any residuary clause, or did the testator die intestate as to that? There is no "residuary clause" in the will within the accepted and usual meaning of that term. In arriving at the scope and meaning of a clause disposing of a balance or residuum, "the court will not only look at the language employed, but the surrounding circumstances, to determine what the intention of the testator was." Kerr v. Dougherty, 79 N. Y. 349. There is no apparent intention that William should take whatever should fail to pass by the prior provisions of the will.

"The intention of the testator in disposing of his residuary estate is to be ascertained, not by what occurred long after the execution of his will, but by what·was, apparently, or presumably, in his contemplation, at the time he was making it." Matter of Hoffman, 201 N. Y. 255, 94 N. E. 993.

He first gives the $1,000 to his wife absolutely. Then he makes provision that his wife shall have "the use of property *over and above* the one thousand dollars." Finally he again carves out and separates the $1,000 from the residue by bequeathing the real and personal *"not above bequeathed to my wife,"* to the son and daughter in proportions stated, thus showing his intention that, in the event of his wife's dying before his death, the word "balance" should not include the $1,000. He could not have intended that in case of his wife's death his son should take the entire $1,000 and that his youngest child, his daughter, should not share in that fund. The bequest to William of the "balance" was a residue of a particular fund, the sum left after carrying out all provisions of the will—a residue of a residue. He assumed that the $1,000 would pass to his wife, and, in making no provision for the failure of that legacy we must assume that his intention was that, in case his wife predeceased him, the $1,000 should pass to his next of kin equally, namely, to his son and daughter.

The said legacy of $1,000 first mentioned in the will lapsed, and the amount thereof is payable, as in intestacy, to the testator's children equally, share and share alike. This determination is amply supported

by Kerr v. Dougherty, 79 N. Y. 327–346; Hadcox v. Cody, 75 Misc. Rep. 569, 135 N. Y. Supp. 861; Matter of Woolley, 78 App. Div. 224, 79 N. Y. Supp. 513; Matter of Dewitt, 113 App. Div. 790, 99 N. Y. Supp. 415.

[3-5] The next question which arises in the construction of the will is, What becomes of the use of the real and personal property over and above the first $1,000 bequeathed, from the death of the testator to the time when the daughter shall arrive at her majority? We must search for the testator's intention, being guided not exclusively by the words of the will itself, but by such words weighed in the light of the surrounding circumstances when the will was made. McGoldrick v. Bodkin, 140 App. Div. 196–198, 125 N. Y. Supp. 101.

"It is rare that any two wills will be found drafted in precisely similar form, and that the various decisions apply the rules of construction to the different cases as they arise, bearing in mind that the chief thing to be accomplished is to ascertain the intent of the testator if the same can be gathered from the will as a whole, and the construction adopted seems to be what the testator desired." Matter of Freel, 49 Misc. Rep. 380, 385, 99 N. Y. Supp. 505, 508.

It seems clear that the testator intended that all his property (except the first $1,000 bequeathed)—that is, the principal fund—should be kept together and intact until his daughter should arrive at 21 years of age, and that until that period arrives only the income should be used; the property being left in the hands of his executrix, to whom he gave the power to sell his real estate. When he employs the words "use of all my real and personal estate," etc., he means rents, income, interest, and profits.

For what purpose is the income to be used? How are the infant children to be provided for during the minority of the youngest child? They owned no property. The wife had no separate estate. It cannot be possible that the father would be so unnatural as not to allow the support of his penniless infants to enter into the plan and scope of his will.

"It is the legal duty of a father to support his children during their infancy, according to his ability; and although the legal obligation is not continued upon his estate after his death, yet every parent recognizes the moral obligation, and so natural is the feeling that in any ambiguous case it may be presumed that the parent was acting under its influence. The courts have acted on this principle." Vail v. Vail, 10 Barb. 69, 71, 72.

We can lay hold on the very significant words in the will, "until our youngest child arrives at the age of twenty-one years." Those words let us look into the mind of the testator, and show that he was planning for the support of *both* children, and was particularly solicitous that the youngest child, who would need maintenance until she should arrive at 21, should be provided for in the meantime, and then should have her $1,000. While he desired his son to finally have the larger portion of the corpus of the estate, he was not willing that the estate should be separated and paid out until the daughter should have enjoyed her share of the income during the full term of her minority. The daughter was the youngest, presumably the one needing the greatest care; therefore he intended that she should receive an equal

share in the income, although she was not to have so large a share in the principal. Giving consideration to the will as a whole and to the surrounding circumstances, it seems that the testator intended that the property was to be held by his personal representative, his executrix or whoever might administer his estate, during the minority of the youngest child, the income to be applied to the support of his wife and two children.

The trust being annexed to the office of executrix, and there being no personal confidence expressed in the discretion of the person named as executrix, and the executrix and wife having died, the trust may be executed by the administrator with the will annexed, and the property is to be held in trust by the administrator with the will annexed, and the children are each entitled to one-half of the rents, interest, income, and profits during the minority of the youngest child. How else are they to be supported?

"The law favors equality among children in the distribution of estates, and in cases of doubtful construction it selects that which leads to such a result." Stokes v. Weston, 142 N. Y. 433, 439, 37 N. E. 515, 517.

Therefore it is certainly equitable, and seems to follow the intention of the testator, that the children during the daughter's minority should have the equal benefit of the rents and income.

[6] The Court of Appeals has held that the strict language used in some portions of a will must give way to the purpose of arriving at the meaning of the testator, based upon a perusal of the whole document. Upon such perusal, if a general scheme can be found to have been intended and provided for in the instrument, and such general scheme is consistent with the rules of law, and so may be declared valid, it is the duty of courts to effectuate the main purpose of the testator. To accomplish such object the meaning of words and phrases used in some parts of the will must be diverted from that which would attach to them if standing alone, and they must be compared with other language used in other portions of the instrument, and thus the general meaning of all the language must be arrived at. Roe v. Vingut, 117 N. Y. 204, 212, 22 N. E. 933.

The court may, and it is its duty to, subordinate the language to the intention; it may reject words and limitations, supply or transpose them to arrive at the correct meaning. Phillips v. Davies, 92 N. Y. 199. In this case if the words "and children" are supplied after the words "to my said wife," the intention of the testator would have more plainly appeared on the face of the instrument. The entire instrument, taken together with the circumstances of the testator, evince the intention of the testator that the children should share equally in the use of the estate during the daughter's minority.

[7] To carry out these intentions, while no trust was in terms created, one should be implied to enable the executrix or her successor to perform the duties imposed; that is, the executrix, or whoever might administer the estate, was a trustee of the corpus of the estate, the income of which was to be applied as hereinabove expressed. Matter of Young, 145 N. Y. 535–537, 40 N. E. 226. No particular formula of words need be used to create a trust. To create a trust

it is not essential that the words "trust" or "trustee" should be used, or that there should be a direct devise in terms to the trustee, or that the authority to receive the rents and profits should be conferred in express language. It is sufficient if the intention to create a trust under the statute can be fairly collected from the instrument, and what is implied from the language used is, as in other instruments, deemed to be expressed. Morse v. Morse, 85 N. Y. 53, 60.

As to the powers of the administrator with the will annexed to perform and carry out the terms of the will as hereinabove construed, the following cases are in point: Matter of Clark, 5 Redf. Sur. 466; Matter of Post (Sur.) 9 N. Y. Supp. 449, and cases cited therein.

It may be that this will may be construed upon the application of different principles, but it seems to me that whatever principles are invoked will lead to an enjoyment by these children of an equal portion of the income during the minority of the daughter and the payment to her of $1,000 upon her arrival at 21 years, and the payment to her brother of the balance of the trust fund. Any other result would not only be contrary to the intentions of the father, but would work out hardship and injustice to the daughter. Every will must be read with due regard to its peculiar provisions and the circumstances attendant upon its making, and that construction should be preferred which works out what would be the testamentary disposition of a normal man. It must be presumed that a normal father would not by his will discriminate against his infant daughter during her minority. Under this will the debts, funeral expenses, expenses of administration and commissions must first be paid. The $1,000 first mentioned in the will lapsed and is payable as hereinabove expressed. The residue, including the real estate and the proceeds thereof, if sold by the administrator, is to be held in trust by the administrator with the will annexed, he having the power under the will to sell the real estate, the interest, income, rents, issues, and profits being payable equally to the son and daughter until the daughter arrives at the age of 21 years, when the daughter is to be paid $1,000 and the son the balance of the trust fund, he then to come into possession of the real estate if still unsold.

A decree will be prepared according to the foregoing views.

Decreed accordingly.