[Sac. No. 3524. In Bank.—March 30, 1926.]

In the Matter of the Estate of EMILY PIXLEY SHAW, Deceased.

[1] WILLS—RIGHT OF LIFE BENEFICIARIES TO POSSESSION AND CONTROL —INTENT OF TESTATRIX.—In determining whether a testatrix intended by the terms of her last will to invest the two persons who are named therein as being each entitled to a life interest in an undivided one-half of her said estate with such right to the possession and control of her respective proportion of said properties as to entitle each of said persons to have the same distributed directly to her in her lifetime under the decree of final distribution of said estate, the court must look to the entire body of the will and give effect, if possible, to every portion thereof.

[2] ID.—GIFT OF LIFE ESTATE—POSSESSION AND CONTROL OF CORPUS— CONSTRUCTION OF WILL.—When a will contains clear and unequivocal gifts of life estates the vesting of such estates will not be limited or controlled by later and doubtful clauses in the will re-

---

1. Construction of will as a whole, notes, 27 **Am. St. Rep.** 516; 11 **L. R. A.** (N. S.) 515; **L. R. A.** 1918F, 769. See, also, 26 **Cal. Jur.** 898; 28 **R. C. L.** 215.

lating to the management of the properties thus devised or of the income thereof; but such rule cannot be given application where, as in this case, the testatrix by the very terms of her devise of the life interests in question has embodied her intended limitation upon the right of the devisees thereof to the possession and control of the income of her said properties and estate.

[3] ID.—TRUSTS—ABSENCE OF TECHNICAL LANGUAGE—INTENT—EQUITY. No technical language is necessary to the creation of a trust, either by deed or by will, and it is not necessary to use the words "upon trust" or "trustee" if the creation of a trust is otherwise sufficiently evident; and if it appears to be the intention of the parties from the whole instrument creating it that the property conveyed is to be held or dealt with for the benefit of another, a court of equity will affix to it the character of a trust, and impose corresponding duties upon the party receiving the title if it be capable of lawful enforcement.

[4] ID.—CREATION OF TRUSTEESHIP—CONSTRUCTION OF WILL.—Where the terms of the will of a testatrix contains the clearly expressed intention on her part to invest her executors in their capacity as such with the power and duty in their discretion of converting her entire estate into money, the exercise of no trust function other than that which the statutory office of executor imposes is required; but where a will goes further than that by provisions which postpone the final disposition of the *corpus* of the estate in whatever form until the termination of the lifetime of both of two devisees who are to receive the income thereof during the lives of each of them and of the survivor, and the ages of said beneficiaries are such that it is apparent that the persons named as executors in the will have been invested with the exclusive possession, management, and control of the entire *corpus* of the estate for a period of time far outreaching the ordinary period to be occupied in the administration of such an estate, a trusteeship is cast upon them, and the fact that their powers and functions are not expressly denominated a "trust" and they are not called "trustees" is not vital to the determination that they are in fact trustees and their function and office that of a trust.

[5] ID.—DUTY TO MANAGE AND HANDLE ESTATE—ACTIVE TRUST—DEPOSIT OF MONEY IN BANKS.—An active trust is created by the expressed "wish, will and intent" of the testatrix where she declares "that my estate shall be managed and handled" by her named executors, who are the president and secretary respectively of a given

---

3. Language essential in creation of trust, notes, 34 Am. St. Rep. 196; L. R. A. 1917C, 568. See, also, 25 Cal. Jur. 144; 26 R. C. L. 1181.

5. See 26 R. C. L. 1171.

bank, or, in case of their death, by their successors in that official relation to said bank; and such trust is not a "dry trust" because of a provision in the will permitting said named executors, in their discretion, to turn the properties of the estate into money, in which event they are required to deposit said money into two banks designated in the will.

[6] ID.—BANK OFFICERS AS TRUSTEES.—Such trust is not rendered void by reason of the fact that the persons who are named as executors of the will of the testatrix, and who, by the terms of said will, are in effect made the trustees of the estate, are the president and the secretary respectively of the bank in which the testatrix directs that her estate, when converted into money, shall be deposited and said bank is not authorized by law to do a trust business.

---

(1) 40 Cyc., p. 1413, n. 22, p. 1414, n. 26.    (2) 40 Cyc., p. 1617, n. 48, p. 1623, n. 82.    (3) 39 Cyc., p. 57, n. 21, p. 58, n. 23.    (4) 40 Cyc., p. 1752, n. 72.    (5) 38 Cyc., p. 30, n. 20; 40 Cyc., p. 1741, n. 29, 30.    (6) 39 Cyc., p. 247, n. 27 New.

APPEAL from a judgment and decree of final distribution of the Superior Court of San Joaquin County. J. A. Plummer, Judge. Affirmed.

The facts are stated in the opinion of the court.

Wyckoff & Gardner and Walter Hoffman for Appellant.

George F. McNoble, McNoble & Arndt, Stanley M. Arndt, Herbert C. Coblentz and Louis Ferrari for Respondents.

RICHARDS, J.—This appeal is from a judgment and decree of final distribution in the matter of the administration of the above estate and in the course of probate of the last will and testament of Emily Pixley Shaw, deceased. The decedent died testate in the county of San Joaquin, state of California, on or about June 5, 1921, leaving an estate mainly, if not wholly, situate in said county, amounting in value to approximately one hundred and fifteen thousand dollars, and consisting almost entirely in money and personal property in the form of notes, stocks, and bonds. The terms of her last will and testament which have direct reference to her disposition of her said estate are those which read as follows:

"Thirdly: I give, devise and bequeath unto my adopted daughter, Catherine Gray Peterson, formerly Catherine Gray Shaw, and now the wife of Fred A. Peterson, of Santa Cruz, California, a life interest in and to one-half of the rest, residue and remainder of my estate after my debts are all paid, the income on said life estate to be paid quarterly to her by my executors, promptly on the first day of each and every quarter during the term of her natural life; and the remainder-in-fee interest in and to the same, upon the death of said Catherine Gray Peterson, is to go to and become the property of her daughter, Helen Peterson Lightfoot, and in case of the death of said person last mentioned, to Catherine Lightfoot, the daughter of said Helen Peterson Lightfoot.

"The interest of the said Catherine Gray Peterson herein devised is a life interest only, and not an interest in fee simple.

"Fourthly: I give, devise and bequeath unto Helen Peterson Lightfoot, daughter of said Catherine Gray Peterson, an undivided one-half interest in and to all the rest, residue and remainder of my estate, to hold and enjoy the same for the term of her natural life, and no longer; and at her death, the remainder-in-fee interest in and to the same is to go to and become the property of her daughter, Catherine Lightfoot.

"The said Helen Peterson Lightfoot is to receive the income on said undivided one-half rest, residue and remainder of my said estate, quarterly, the same to be paid to her by my executors promptly on the first day of each and every quarter during the term of her natural life.

"The interest herein devised to said Helen Peterson Lightfoot is a life interest only, and not an interest in fee simple.

"I desire that all of the debts, charges and expenses of administration of my estate, and all the expenses of my last illness and funeral expenses, be paid in full before said estate be distributed, and before said shares go to the respective devisees mentioned herein.

"Lastly: I hereby nominate and appoint J. B. Cory and W. H. Lorenz the executors of this, my last will and testament, to serve without bonds being required of them, or either of them, and I hereby revoke all former wills by me

made; and I request that no bonds shall be required of the successors in office of my said executors, or either or any of them.

"I hereby direct that my executors, if they deem it advisable and for the best interest of my estate and for all concerned, to cause all of the real and personal property of my estate to be sold and converted into cash, and that after all necessary legal disbursements have been made in the administration of said estate, that the funds of said estate be kept on deposit in the First National Bank of Lodi and in the Central Savings Bank of Lodi, and that during the lives respectively of said life tenants, mentioned herein, said funds, and all funds in my estate, remain in said banks.

"I further hereby appoint as the successor of either or both of my executors, in case of their deaths, their successors, respectively, in office as president and secretary, or either or both, of the said First National Bank of Lodi; it being my wish, will and intent that my estate shall be managed and handled ᵒby the president and secretary of the said First National Bank of Lodi, and in case of the death of either of them, that his successor in such case shall take the place of such present executor—that is to say, in case of the death of said J. B. Cory that his successor as president of said bank shall serve as one of my executors, and in case of the death of W. H. Lorenz, that his successor as secretary of said bank shall serve as one of my executors."

The questions which are presented upon this appeal involve the interpretation to be placed upon the foregoing provisions of the decedent's last will and testament. The trial court upon the petition for distribution of the decedent's estate pursuant to the said terms of her last will and testament, and upon the opposition thereto presented by Catherine Gray Peterson and Helen Peterson Lightfoot, the two devisees of life interests in said estate under said will, made certain findings of fact and conclusions of law upon which the said court predicated the judgment and decree appealed from. The above-named devisees of life interests under said will, and each of them, appealed from said judgment and decree, but subsequently thereto the appeal was, by the district court of appeal in which the

matter was then pending, dismissed as to the appellant
Helen Peterson Lightfoot without prejudice to the appeal
of the other appellant. The remaining appellant assails
upon this appeal certain of the findings of fact and con-
clusions of law of the trial court wherein the latter in in-
terpreting the provisions of the last will and testament of
said decedent above set forth determined that said de-
cedent had by the foregoing terms of her said will devised
to each of said appellants a life interest in the income only
of the properties of her said estate; and as to the *corpus*
thereof had created a trust and had invested the executors
named therein with the powers and functions of trustees
and with the right to have distributed to themselves as such
the said *corpus* of said estate and to hold the same as such
during the lifetime of said appellants, and each of them,
for the purposes declared in said will. We are asked to
review and reverse the findings, conclusions, and decree of
the trial court in the foregoing regard.

[1] The primary question presented for our considera-
tion is as to whether the testratrix intended by the fore-
going terms of her last will to invest the two persons who
are named therein as being each entitled to a life interest
in an undivided one-half of her said estate, with such right
to the possession and control of her respective proportion
of said properties as to entitle each of said persons to have
the same distributed directly to her in lifetime under the
decree of final distribution of said estate. In determining
this question it is conceded by both the appellant and the
respondents herein that we are to look to the entire body
of the decedent's said last will and to give effect, if pos-
sible, to every portion thereof. [2] The appellant, however,
argues and cites authority for her insistence that when a
will contains clear and unequivocal gifts of life estates, the
vesting of such estates will not be limited or controlled by
later and doubtful clauses in the will relating to the man-
agement of the properties thus devised or of the income
thereof. There can be no doubt as to the correctness of
this rule, since it is embodied in section 1322 of the Civil
Code, but conceding that the rule would be as appellant
states it in respect to an appropriate situation, we are satis-
fied that it cannot be given application to the instant case
for the reason that the testatrix by the very terms of her de-

vise of the life interests in question has embodied her intended limitation upon the right of the devisees thereof to the possession and control thereof during the life of the term thereof. In the immediate context wherein the testatrix devised the so-called life interest in the undivided one-half of her estate to each of said devisees she limited the extent of the domination, receipt, possession, and control of the interest thus devised to the income thereon in each instance; and in other parts of her said will by words equally clear and distinct reposed the exclusive domination and control over and possession of the *corpus* of each of said undivided and indivisible portions of her said properties and estate in persons other than the aforesaid devisees, during the entire life of each of them and of the term of their interest in said properties and estate. It is to be noted as of prime significance in this connection that the properties of said testatrix consisted almost wholly of personal property, together with her small holding of real estate, which the executors of her said will were given discretion to turn into money, retaining the *corpus* thereof, and delivering the income thereof only to said devisees during their lives. To properties of this character the terms "life estate" and "life tenants" could have only a limited significance; and since the whole of the *corpus* was devised in remainder, the chief value to the devisees of a life interest therein consisted in their right to the income or usufruct thereof. Reading the will thus as a whole and finding no doubt or uncertainty as to the foregoing terms thereof we therefore arrive at the conclusion that the only life interest with which the testatrix intended these particular devisees to be invested was thus declared to be a life interest in the income of her said properties and estate. The cases to which we are referred by the appellant as supporting her interpretation of the terms of this will do not go to the extent of requiring us to uphold that interpretation. In *Estate of Pforr*, 144 Cal. 121 [77 Pac. 825], no attempt was made by the testator to create a limited estate nor were his executors invested with any powers inconsistent with their functions as executors or which were not to be exercised in that capacity and within the period of two years, which would be a reasonable period within which to complete the administration of the estate. The case furnishes no parallel

to the case at bar. In the *Estate of Campbell,* 149 Cal. 712 [87 Pac. 573], there was no limitation upon the estates devised by the will of the testator nor, as this court held, was there any power with which the executrix was invested except such as pertained to her office. In the case of *Bennalack* v. *Richards,* 116 Cal. 405 [48 Pac. 622], all that was decided was that the investment of the executors with the naked power of sale of the properties of the estate did not operate of itself to create a trust in said executors nor to invest them with any estate or with powers other than those conferred by law upon executors. In the case of *Sheehan* v. *Sullivan,* 126 Cal. 192 [58 Pac. 543], the sole question involved was as to whether the mere verbal and indefinite declarations of the grantor as to an intended trust affecting the property embraced in a deed absolute in form were sufficient to amount to the creation of a trust in the grantee. This court properly held that they were not. In each of the foregoing cases also it is to be noted that the devises were in the main of real estate to which the law applicable to the creation of particular estates and of trusts in real estate would have a more especial application. We shall discuss certain other cases to which we have been referred in a later portion of this opinion, but upon the branch of the case under immediate consideration we are satisfied that it was not the testatrix's intent as expressed in her said will to invest the appellants herein with a greater estate than that of a life interest in the income to be derived from her said properties in their present form or when turned into money according to the direction of her will.

[3] The next question presented for our consideration is as to whether the trial court was justified by the terms of the decedent's will in distributing the entire *corpus* of her estate to the executors named in her said will and to their successors to be selected in the manner designated therein as trustees of an express trust for the purposes and period designated in the last will of said decedent. It is urged by the appellant herein that the said will of said decedent does not create a trust in said persons or in the successors of them for the reason that there is no mention or use of the words "trust" or "trustee" in said will, nor are there any appropriate words therein indicating an intent to create a

trust. As to the use of the words "trust" or "trustee" in an instrument it has been frequently held that there is no magic in mere words of this character and that the question as to whether or not a trust has been created by such instrument depends rather upon the powers and duties with which the persons named therein have been invested, than upon the titles bestowed upon them or the terms employed in defining the nature and extent of their estate. The rule in this regard is perhaps most clearly stated in the case of *Colton* v. *Colton,* 127 U. S. 300 [32 L. Ed. 138, 8 Sup. Ct. Rep. 1164, see, also, Rose's U. S. Notes], which was a case arising in California and which made its way through the federal courts to the court of last resort. The words of the will in that case were: "I give and bequeath to my said wife, E. M. C. all of the estate, real and personal, of which I shall die seized, possessed, or entitled to. I recommend to her the care and protection of my mother and sister, and request her to make such provision for them as in her judgment will be best." It was held that a trust was imposed upon the surviving wife to make suitable provision for the mother and sister. The court said: "No technical language, however, is necessary to the creation of a trust, either by deed or by will. It is not necessary to use the words 'upon trust' or 'trustee' if the creation of a trust is otherwise sufficiently evident. If it appears to be the intention of the parties from the whole instrument creating it that the property conveyed is to be held or dealt with for the benefit of another, a court of equity will affix to it the character of a trust, and impose corresponding duties upon the party receiving the title if it be capable of lawful enforcement. No general rule can be stated that will determine when a conveyance will carry with it the whole beneficial interest and when it will be construed to create a trust; but the intention is to be gathered in each case from the general purpose and scope of the instrument." The foregoing language was quoted with approval by this court in the case of *Estate of Reith,* 144 Cal. 314, 318 [77 Pac. 942], in which, also, the language of the supreme court of New York in the case of *Tobias* v. *Ketchum,* 32 N. Y. 319, received the approval of this court. In the last-named case "the testator did not use the word 'trustee' or 'trustees,' but gave the executors power to rent,

lease, repair, and insure his real estate, until sold or divided, and out of the rents and profits to pay the provision made for the widow, and to at a certain time divide the property among the children or other heirs. It was held that the will created a trust in the executors. The court said, quoting from Hill on Trustees: 'It is by no means necessary that the donee should be expressly directed to hold the property to certain uses or in trust, or as trustee. . . . It is one of the fixed rules of equitable construction that there is no magic in particular words; and any expressions that show unequivocally the intention of the parties to create a trust will have that effect. It was said by Lord Eldon that the word "trust" not being made use of is a circumstance to be alluded to, but nothing more; and if the whole frame of the will creates a trust, the law is the same, though the word "trust" is not used.' " Many other cases might be cited in support of the same doctrine, but we deem their further review unnecessary in view of the holding of this court in *Estate of Reith, supra*. [4] Turning to the terms of the will of the testatrix in the instant case we find the clearly expressed intention on the part of the decedent to invest her executors in their capacity as such with the power and duty in their discretion of converting her entire estate into money. This they might have done within the period usually occupied in administering estates of like amount to this one. Thus far the exercise of no trust function other than that which the statutory office of executor imposes would be required. But this will goes much further than that by the provisions thereof which postpone the final disposition of the *corpus* of this estate in whatever form until the termination of the lifetime of both of the two devisees who are to receive the income thereof during the lives of each of them and of the survivor. The record herein discloses that in the year 1919, at the time of the execution of said will, Catherine Gray Peterson, one of said devisees, was of the age of about fifty-three years; that her daughter Helen Peterson Lightfoot, the other of said devisees, was at said time of the age of under thirty years, and that Catherine Lightfoot, the devisee of the remainder of said estate after the termination of both of the aforesaid life interests therein was of the age of about four years. It will thus be evident

without any close computation based upon mortality tables that the persons named in said will as the executors thereof have, by the terms thereof, been invested with the possession, management, and control of the entire *corpus* of said estate for a period of time far outreaching the ordinary period to be occupied in the administration of such an estate. During such period thus extending far beyond the scope and need of administration and occupyng the entire lives of the two devisees of said life interests in said estate the said persons designated as executors in the decedent's said will are to exercise a degree of dominion over the whole of the properties of said estate, coupled with such exclusive possession and power of management thereof as is usually exercised by trustees and as ought to be surrounded by such safeguards as the law imposes upon trustees under like conditions. The provisions of this will which thus define the powers, duties, and responsibilities of the persons named therein or their successors and designated as executors therein are not doubtful or uncertain in any other respect except in the fact that their prescribed powers and functions are not expressly denominated a "trust," nor are they called therein "trustees"; but this, as we have seen, is not vital (*Estate of Reith, supra,* and cases cited) to the determination that such persons are in fact trustees and their function and office that of a trust if their control of the properties with which they are invested and the performance of their duties with respect thereto are such as in the nature of things require that the mantle of a trusteeship shall be cast upon their shoulders. The decisions are uniform to this effect. In the case of *Mee* v. *Gordon,* 187 N. Y. 400–407 [116 Am. St. Rep. 613, 10 Ann. Cas. 172, 80 N. E. 353, 354], the court aptly says: "The duty of investing and administering the share in question it is true is imposed upon persons who are designated as executors rather than as trustees, but it is a very cardinal rule that the duties imposed upon a person rather than the name applied to him in the will should measure his office and position." In the case of *In re Bartholomew's Will,* 82 Misc. Rep. 1 [143 N. Y. Supp. 695], involving the interpretation of a will in which, as in this case, the words "trust" and "trustee" did not appear, the court, after reciting the terms of the will, said: "To carry out these intentions,

while no trust was in terms created one should be implied to enable the executrix or her successors to perform the duties imposed; that is, the executrix or whoever might administer the estate was a trustee of the *corpus* of the estate the income of which was to be applied as hereinabove expressed. (*Matter of Young*, 145 N. Y. 535, 537 [40 N. E. 226].) No particular form of words need be used to create a trust. To create a trust it is not essential that the words 'trust' or 'trustee' should be used or that there should be a direct devise in terms to the trustee or that the authority to receive rents and profits should be conferred in express language. It is sufficient if the intention to create a trust can be fairly collected from the instrument, and what is implied from the language used is, as in other instruments, deemed to be expressed.'' The same doctrine is laid down in many cases from other jurisdictions which but reinforce the rule set forth in the Reith case above cited. We have no hesitancy, therefore, in holding that the powers and duties with which the persons named in the said will of the decedent with respect to their dominion over and management and control of the *corpus* of the testatrix's estate during the lifetime of 'the appellants herein were such as to constitute them trustees of the properties of the decedent when their powers and functions as the executors of her said will would draw to a close and the time would arrive in the usual order of procedure for the distribution in probate of her said estate.

[5] The appellant herein, however, insists that the trust thus sought to be created is void for the following several reasons: First, that said trust is a so-called ''dry trust.'' The term ''dry trust'' refers to a trust wherein the trustees would have no actual responsibilities as such and no active duties to perform. But this trust is not of that character but is rather of the character referred to in the case of *Gray* v. *Union Trust Co.*, 171 Cal. 637, 640 [154 Pac. 306], wherein the duties of the trustee were to so manage, invest, and handle the trust property as to give to the beneficiary the usufructuary benefit thereof during her lifetime and upon her death to see that the property goes to the nominees under her will. The court in that case held that such a trust was not a dry, naked trust, since active duties were imposed upon the trustee during the lifetime of the benefi-

ciary entitled to the income thereof. In like manner in the instant case an active trust was created by the expressed "wish, will and intent" of the testatrix, as she declares, "that my estate shall be *managed and handled*" by her named executors, who are respectively the president and secretary of the First National Bank of Lodi; or, in case of their death, by their successors in that official relation to said bank. The appellant herein makes the further insistence, that said trust, if created at all, is a dry trust because of the provisions in said will with respect to the deposit of the funds of said estate, if turned into money, in the two banks named in her said will. But the answer to this contention is that it is not made compulsory upon those who are thus to have charge of the properties of her said estate to turn the same into money, but is only discretionary upon them to do so. The executors of her said estate and who are to be the trustees thereof have thus far maintained the entire property in the original form in which they received it, and they may in their discretion continue to manage and handle said properties in such form, which is mainly that of stocks, notes, and bonds; in which event it could hardly be contended that a trust involving the management and handling of such properties would be a dry or naked trust. But even if said properties should be turned into money and deposited in the banking institutions named in the will of said testatrix, the trust would not thereupon or for that reason become a dry or naked trust, since equity, which is the guardian and ultimate administrator of all trusts, would require of said trustees such an active supervision over the properties or moneys thereof, whether in the hands of these or of other depositaries, as would result in carrying out the expressed purpose of its creator with relation to the provision and payment of a suitable income regularly to those having a life interest in such income. [6] The final contention of the appellant that said trust is void for the reason that the trustees of said trust are, in point of fact, the banks who are named as the depositaries of the funds of said estate, and which said banks are not authorized by law to do a trust business, is devoid of any real merit. The persons named in said will as the executors thereof were, it is true, the president and secretary of the First National Bank of Lodi, but it was

said persons and not said bank who were to be the executors of the decedent's will. Their official relation to said bank was merely *descriptio personae;* and it is reasonable to assume that it was her intention that this would continue to be so when their relation changed to that of the trustee of her properties. The trial court so interpreted her will and we are satisfied with that interpretation. It is therefore our conclusion that the trial court was not in error in the interpretation which as a whole it placed upon the will of said decedent and hence did not err in making and entering its judgment and decree of distribution in accord therewith.

The judgment and decree are therefore affirmed, the respondents to recover their costs herein, to be paid out of the assets of said estate.

Seawell, J., Shenk, J., Lennon, J., Waste, C. J., Curtis, J., and Lawlor, J., concurred.

Rehearing denied.